IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN LYLES,

     *Plaintiff,*

v.                                        No. 2:24-cv-00728-SMD-KRS

T & DS LUBE DOCTORS LLC,

and LUCAS DOWDY,

     *Defendants.*

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION**

INTRODUCTION

     This matter comes before the Court on Plaintiff's motion for conditional certification. Doc. 15 ("Pl.'s Mot. for Conditional Cert."). Having reviewed the Parties' briefing and the applicable law, the Court **GRANTS** Plaintiff's motion.

FACTUAL BACKGROUND

     The following facts are based on Plaintiff's allegations as outlined in his complaint, motion for conditional certification, and declaration. *See* Doc.1 ("Pl.'s Compl."); Pl.'s Mot. for Conditional Cert.; Pl.'s Mot. for Conditional Cert., Ex. A ("Pl.'s Decl.").

     Plaintiff John Lyles ("Plaintiff") worked in New Mexico for T & Ds Lube Doctors ("Defendant T & Ds") as an oilfield pumper for approximately ten months. Pl.'s Mot. for Conditional Cert. at 3. Lucas Dowdy ("Defendant Dowdy") is the owner, founder, and president of T & Ds Lube Doctors (collectively "Defendants"). *Id.* Plaintiff's job involved driving around the state to different well-sites and servicing clients' equipment. Pl.'s Decl. ¶ 3. Defendants classified Plaintiff as an independent contractor (also known as a 1099 contractor) and paid him a flat day rate. *Id.* ¶ 8; Doc. 16 ("Defs.' Resp.") at 3. Plaintiff alleges that he typically worked over 80 hours per week and, in addition to his oilfield duties, was required to attend company safety

1

meetings on his days off without compensation.  Pl.'s Decl. ¶ 20.  Plaintiff did not receive overtime compensation.  *Id.* ¶ 9; Defs.' Resp. at 3.

Plaintiff alleges that Defendants improperly classified him as an independent contractor because, in reality, Defendants exercised control over his daily tasks.  Pl.'s Compl. ¶ 30–34. "Specifically, Defendants dictated the practice goals and what pressing or tactical items needed to be done in order to meet the goals of the clients."  *Id.* ¶ 39.  For instance, Plaintiff states that he prohibited from leaving a well-site without permission from the company and that he was terminated for violating this policy after he left the well-site without notice.  *Id.* ¶ 17.  As a result, Plaintiff alleges that he was not an "independent contractor"; he did not "earn a profit based on any business investment of his own, determine his own hours, market his business or services, determine pricing, or provide his own tools or equipment.  *Id.* ¶¶ 62–67, 76–79, 81–85.

Plaintiff alleges that these policies were not unique to him, but that other oilfield workers classified as independent contractors were "subject to the same or similar illegal pay practices for similar work in the oilfield."  *Id.* ¶ 47.  The work they performed was done "within mandatory and designed parameters and in accordance with pre-determined operational plans created by Defendants."  *Id.* ¶ 52.  He believes that Defendants exercised significant control over all oilfield workers, including those classified as independent contractors, and required them adhere to the employee policies attached to his declaration.[1]  Pl.'s Decl. ¶ 18–19.  Accordingly, Plaintiff alleges that these independent contractors were also illegally denied overtime compensation.

Plaintiff now seeks to recover unpaid overtime wages under the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

---

[1]  The attached employee forms include an employee handbook, T & Ds' drug and alcohol policy, a tool checklist, T & Ds' driving policy, and company vehicle policy.  *See* Pl.'s Decl. at 8–21.  Each of these documents bears Plaintiff's signature.  *Id.* at 11, 13 15, 19, 21.

216(b).  Pl.'s Compl. at 1.  Plaintiff styles his NMMWA claim as a Rule 23 class action and his FLSA claim as a collective action.  *Id.*  The present motion is limited to Plaintiff's FLSA claim and his corollary demand for conditional certification.  Pl.'s Mot. for Conditional Cert. at 1.  Defendants oppose conditional certification in their response.  Doc. 16 ("Def.'s Resp.").  Plaintiff replied to these contentions, as well as Defendants' objections to the contents of the proposed notice.  Doc. 18 ("Pl.'s Reply").

DISCUSSION

## I.    Motion for Conditional Certification

Under the FLSA, an employee may bring a collective action on behalf of themselves and "other employees similarly situated."  29 U.S.C. § 216(b).  Unlike Rule 23 class actions, FLSA actions are only binding on individuals who opt in, rather than opt out, of the collective.  *Id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party, and such consent is filed in the court in which such action is brought.").  Every individual who opts in becomes a named plaintiff in the action.  *See id.*; *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (explaining that Congress amended the FLSA's collective action provision to require written consent from opt-in plaintiffs and thus "limit[ed] private FLSA plaintiffs to employees who asserted claims in their own right");  *Borup v. CJS Solutions Grp.*, 333 F.R.D. 142, 148 (D. Minn. 2019) ("[O]pt-in plaintiffs hold the relationship to the case as does the named plaintiff.").  As a result, notice must be sent to all "similarly situated" employees prior to class certification so that they may decide whether to join the suit.  *Id.*; *Olivas v. C & S Oilfield Servs., LLC*, 349 F. Supp. 3d 1092, 1108 (D.N.M. 2018).

The FLSA does not explain what it means for employees to be "similarly situated," but the Tenth Circuit has endorsed a two-step ad hoc approach to making this determination.  *See Thiessen*

*v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). First, in the "notice," or "conditional certification" stage, the court preliminarily determines whether the proposed class members are "similarly situated" "based on allegations in the complaint supported by sworn statements." *Id.* at 1102; *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1312 (D.N.M. 2017). Conditional certification is "not really a certification," but the exercise of the court's "discretionary power … to facilitate the sending of notice to potential class members." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (internal marks and alterations omitted) (citing *Hoffman-La Roche*, 493 U.S. at 174). If conditional certification is granted, plaintiffs send notice to the proposed class members and the parties proceed with discovery. *Olivas*, 267 F. Supp. 3d at 1310. The court then, at the close of discovery, revisits the "similarly situated inquiry" based on who has opted into the collective. *Id.* at 130–11.

The plaintiff's burden is "lenient" in the first stage. *Thiessen*, 267 F.3d at 1103. Plaintiffs "need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Olivas*, 349 F. Supp. 3d at 1109 (quoting *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375–76 (N.D.N.Y. 1995)). The court "does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims." *Greenstein v. Meredith Corp.*, 948 F. Supp. 2d 1266, 1267 (D. Kan. 2013). Still, conditional certification is not "automatic." *Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1172 (D.N.M. 2021). Plaintiffs must offer "at least some evidence beyond unsupported factual assertions" to prevail. *Id.* Facts indicating that putative class members are "similarly situated" include evidence that they have the same employer, shared similar duties, or were subject to the same form of wage calculation. *See, e.g.*, *Landry v. Swire Oilfield Servs., LLC*, 252 F. Supp. 3d 1079, 1118 (D.N.M. 2017) (granting conditional certification whether proposed classes included

"employees with similar positions" who had "essentially the same primary duties"); *Calvillo*, 267 F. Supp. 3d at 1314 (granting conditional certification where employees "worked for the same employer, performed largely similar duties and their allegations of FLSA violations [were] derived from the same alleged practices"). Most importantly, plaintiffs' allegations must evince that the employees were "together victims of a single decision, policy, or plan."[2] *Thiessen*, 267 F.3d at 1102; *Calvillo*, 267 F. Supp. 3d at 1310.

Once conditional certification is obtained, the plaintiffs send "court-approved notice to employees … who in turn become parties to a collective action only by filing written consent with the court." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449 (2016) (internal quotations and citations omitted). The court then, at the close of discovery, uses a more demanding standard to reevaluate whether those who have opted in are "similarly situated." *Thiessen*, 267 F.3d at 1103. The court considers the "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required." *Id.*; *see, e.g.*, *Pruess v. Presbyterian Health Plan, Inc.*, 745 F. Supp. 3d 1218, 1248

---

[2] The Court notes that district courts in the Tenth Circuit do not strictly break the "similarly situated" analysis into the above two pieces—(1) whether the putative class members' had comparable roles and (2) whether they were subjected to the same allegedly unlawful policy. However, courts typically require evidence of both, though demonstrating a "uniform policy" is more important. *See, e.g.*, *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 908–15 (D. Kan. 2021) (splitting conditional certification analysis into similarly situated and uniform policy inquiries); *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580-KWR-KK, 2021 WL 5861184, at *2–6 (D.N.M. Dec. 10, 2021) (same); *Bustillos*, 310 F.R.D. at 664–65 (granting conditional certification where employees "performed largely similar job duties" and "most importantly, their damages all derive[d] from the same 'decision, policy or plan'"). For example, employees with wholly disparate roles cannot bring a collective action, even if they are all subject to a singular unlawful policy. *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 665 (D. Kan. 2004) ("Before analyzing whether plaintiff and the putative class were 'victims of a single decision, policy, or plan,' the logical preliminary question is whether the putative class shares similar job duties with plaintiff."); *cf. Valencia v. Armada Skilled Home Care of NM, LLC*, Civ. No. 18-1071 KG/JFR, 2020 WL 2768977, at *3 (D.N.M. May 28, 2020) (granting conditional certification where plaintiffs shared "same general duties"). Likewise, employees who have comparable duties cannot bring a collective action if there is no uniform, injurious policy. *Maestas v. Day & Zimmerman*, Civ. No. 09-019 JCH/LFG, 2010 WL 11601189, at *2 (D.N.M. Jan. 4, 2010) (denying conditional certification where plaintiffs presented "numerous ways in which they [were] subject to the same lawful policies" but did not demonstrate evidence of an "unlawful pay practice").

(D.N.M. 2024) (applying *Thiessen* factors to second-stage analysis); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004) (explaining that *Thiessen* factors are reviewed at the second stage of certification).

A.  Analysis

The Court first addresses the question of whether the putative plaintiffs—oilfield workers hired as independent contractors—are similarly situated.  Plaintiff proposes a collective of "all oilfield workers who worked for T and D[s] Lube Doctors LLC and/or Lucas Dowdy, anywhere in the state of New Mexico at any time from July 16, 2021, through the final disposition of this matter, and were paid a day rate but did not receive overtime."  Pl.'s Mot. for Conditional Cert. at 2. Plaintiff alleges that the putative plaintiffs shared an employer, were classified as independent contractors during their time working for Defendants, and did not receive overtime compensation. *Id.*  Their day-to-day tasks included "general frac, flowback, and drill-out support for Defendants' at clients' well-sites."  Pl.'s Compl. ¶ 51.  Plaintiff states that his knowledge of Defendants' overtime policy comes from conversations he had with at least five oilfield workers.  Pl.'s Decl. ¶¶ 6, 34.  Through these discussions, he learned that other oilfield workers "would work twelve or more hours straight," but were paid "a day rate with no overtime."  *Id.* ¶¶ 33–34.  Plaintiff also submitted Defendants' employee policies and handbooks as evidence of the control that Defendants exerted over oilfield workers.  *See id.* at 8–21.  The policy requires "employees" to, among other things, report any damages to their supervisor, refrain from using the vehicle for personal reasons, and comply with traffic laws.  *Id.* at 8.

If conditional certification is granted, Plaintiff seeks the Court's approval to send notice to the proposed plaintiffs in accordance with Plaintiff's proposed schedule.  *See* Pl.'s Mot. for Conditional Cert. at 13.  To facilitate the sending of notice, Plaintiff requests that the Court order

Defendants to provide "names, current or last known addresses, e-mail addresses, phone numbers, cell phone numbers, and dates of employment for current and former Oilfield Workers fitting the description of the conditionally certified class." *Id.* at 14.

Defendants concede that they hired independent contractors for work on their well-sites and that at least one of these contractors performed duties akin to Plaintiff's. Defs.' Resp. at 3, 11. Defendants argue, however, that there was no "company-wide policy" of exempting oilfield workers from the FLSA; they characterize their decision to hire 1099 contractors as one "made on a case-by-case basis," depending on "the needs of the company at that time, the requirements of the particular work and the desires of the individual." *Id.* at 4. In tandem with this argument, Defendants aver that conditional certification is impractical because determining the appropriateness of each plaintiff's classification is an individualized inquiry which is unsuitable for collective resolution. *Id.* at 12. Defendants also attack Plaintiff's declaration as "conclusory." *Id.* at 10. To this end, Defendants stress that Plaintiff "does not identify the place of any actual conversation" nor "identify the name of any other coworker." *Id.*

If the Court does grant conditional certification, Defendants ask that the class be narrowed from "all oilfield workers" who were paid a day rate, Pl.'s Mot. for Conditional Cert. at 2, to "all *contract* oilfield workers" who were paid a day rate, Defs.' Resp. at 13 (emphasis added). Defendants additionally request that the proposed class be revised to employees who "worked for T and Ds Lube Doctors," *id.*, rather than "for T and [Ds] Lube Doctors LLC and/or Lucas Dowdy," Pl.'s Mot. for Conditional Cert. at 2. Defendants propose adding language to the notice form that indicates that putative class members may be responsible for Defendants' costs if the litigation is unsuccessful and that the Court "does not endorse or recommend any particular course of action for potential class members." Defs.' Resp., Ex. B at 1, 4 ("Defs.' Proposed Notice"). Plaintiff

objects to this proposal on the grounds that Plaintiff's counsel "has agreed to be responsible for any statutory costs assessed against Plaintiff and any future opt-in Plaintiff." Pl.'s Reply at 5. Plaintiff also opposes removing Defendant Dowdy from the collective's description because doing so would address the merits of whether Lucas Dowdy and T & Ds are joint employers. *Id.* at 4.

### 1. The Putative Class Members are Similarly Situated.

The Court relies on Plaintiff's complaint, and accompanying sworn statements, to evaluate whether there is evidence of other "similarly situated" employees. *Hose v. Henry Indus.*, 49 F. Supp. 3d 906, 908 (D. Kan. 2014) (whether there are in fact substantial allegations of a uniform plan or policy, "the court can consider the substantial allegations of the complaint along with any supporting affidavits or declarations"). The Court acknowledges that whether Plaintiff has submitted sufficient evidentiary support for conditional certification presents a close question, even under *Thiessen*'s lenient standard. Plaintiff has attached only his own declaration, which states that he had conversations with other oilfield workers who were hired as independent contractors, but lacks details about when those conversations occurred, who they were with, where they took place, and what was said. Pl.'s Decl. ¶¶ 4–6. Plaintiff also concedes that, as of now, he is only aware of two other putative class members. Pl.'s Reply. at 2–3. Ultimately, however, the Court will grant Plaintiff's motion. This conclusion is driven by a few considerations, each of which will be discussed in more detail below. First, Defendants acknowledgement that it "has on occasion hired individuals to perform work as 1099 contractors" and that "one other 1099 contractor could be said to have performed services similar to those performed by Plaintiff" supports conditional certification. Defs.' Resp. at 2, 11. Second, Plaintiff's declaration contains more than "conclusory allegations" and no other evidence is required at this stage. *Colbert v. Monarch Transp., LLC*, No. 5:13-CV-4126-JTM-JPO, 2015 WL 339320, at *5 (D. Kan. Jan. 23,

2015) ("[T]he Tenth Circuit has not required any quantum of evidence to be produced at the notice stage." (internal quotations omitted)).  Third, the FLSA aims "to ensure that *every* covered worker receives 'a fair day's pay for a fair day's work.'"  *Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017) (emphasis added).  In keeping with this principle, the Court favors sending notice to putative plaintiffs, even if the collective is small, to further the law's remedial purpose. *Olivas*, 349 F. Supp. 3d at 1100.

Plaintiff's complaint, declaration, and motion for conditional certification substantiate his claim that the putative plaintiffs are similarly situated.  Plaintiff specifies that he interacted with numerous other oilfield workers who worked at various well-sites and that the all performed "general frac, flowback, and drill-out support for Defendants' at clients' well-sites."  Pl.'s Decl. ¶ 6; Pl.'s Compl. ¶ 51.  Although the exact job title and duties of each employee may have varied, these differences do not undermine conditional certification.  *Olivas*, 349 F. Supp. 3d at 1111 ("The Court recognizes that a Field Hand and, say, a Tank Hand, may not perform precisely the same tasks, but that proposed class members held different job titles does not mean that they are not similarly situated."); *Landry*, 252 F. Supp. 3d at 1120 (explaining that plaintiffs need only show that their positions are "similar" not "identical").  It is enough for conditional certification that the putative plaintiffs had a common employer, completed similar tasks, and were all classified as independent contractors.

The Court also finds Defendants' argument that Plaintiff must submit multiple declarations to obtain conditional certification to be unconvincing.  Defs.' Resp. at 10.  This District Court, along with many others, has conditionally certified classes based on substantial allegations in the complaint and a singular declaration.  *See, e.g.*, *Kerr v. K. Allred Oilfield Servs., LLC*, No. 2:20-CV-00477-WJ-SMV, 2020 WL 6799017, at *4 (D.N.M. Nov. 19. 2020) ("While Plaintiff submits

9

only one declaration, this fact alone does not support denial of conditional certification."); *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *1 (D.N.M. Apr. 20, 2016) (granting conditional certification based on one declaration and allegations in complaint); *see also Smyers v. Ohio Mulch Supply, Inc.*, Case No. 2:17-cv-1110, 2019 WL 101905, (S.D. Ohio Jan. 4, 2019) ("Courts have allowed conditional certification based on one declaration.") (first citing *Sisson v. OhioHealth Corp.*, No. 2:13-cv-0517, 2013 WL 6049028 (S.D. Ohio Nov. 14, 2013); and then citing *Ford v. Carnegie Mgmt. Servs., Inc.*, Civil Action 2:16-cv-18, 2016 WL 2729700 (S.D. Ohio May 11, 2016)).

Demanding multiple declarations implies that, at the first stage, Plaintiff is tasked with providing detailed facts about putative plaintiffs or identifying individuals who are interested in joining the suit. Def.'s Resp. at 11 ("[Plaintiff] has not put forth facts from which we can discern whether and to what extent that other individual—or for that matter any individual other Plaintiff—was (1) misclassified as an independent contractor and (2) worked in excess of 40 per week [sic] for which they were not compensated."). This is incorrect. The Tenth Circuit "has never adopted the requirement that plaintiffs demonstrate the existence of other employees who wish to opt into the litigation." *Felps v. Mewbourne Oil Co.*, 460 F. Supp. 3d 1232, 1237 (D.N.M. 2020) (quoting *Gonzalez v. Family Dollar Stores, Inc.*, Civ. No. 03-535 JH/LFG, 2005 WL 8163793, at *3 n.3 (D.N.M. June 21, 2005)); *Guariello*, 517 F. Supp. 3d at 1174–75 ("The lack of opt-in plaintiffs does not support denial of conditional certification); *Valencia*, 2020 WL 2768977, at *3 (finding that plaintiff was not required to "demonstrate that other employees want to join the litigation"); *Kemmerlin v. Bicentennial Inc.*, Case No. 24-CV-0230-CVE-CDL, 2015 WL 371802, at *4 (N.D. Okla. Feb. 3, 2025) (declining to consider defendant's argument "as to whether plaintiff …

demonstrated that similarly situated opt-in plaintiffs who wish to join the collective exist at this stage").

Conditional certification does not require documentation, multiple declarations, or fellow opt-in plaintiffs to warrant conditional certification.  Indeed, Plaintiff's declaration, coupled with Defendants' own admission that there was another employee who was (1) hired as an independent contractor and (2) performed duties similar to Plaintiff, conditional certification would be appropriate.  *See Hudson v. Protech Security Grp., Inc.*, 237 F. Supp. 3d 797, (N.D. Ill. 2017) ("[Plaintiff's] affidavit attesting that [Defendant] involuntarily classified him as an independent contractor to avoid paying him overtime wages under the FLSA, together with [Defendant's] admissions that it sometimes categorized Mr. Hudson and other employees as independent contractors, also creates the required 'modest factual showing' that supports conditional certification.").  Defendant's leading case, *Silva*, does not persuade the Court otherwise.  Defs.' Resp. at 7 (discussing *Silva v. Agave Transp. Servs., Inc.*, Civ. No. 21-1117, 2023 WL 2087955 (D.N.M. Feb. 18, 2023)).  Defendant quotes *Silva* for the proposition that a declaration without "key details" such as "Plaintiff interacting with his coworkers enough to establish the rapport necessary to discuss wages, … Plaintiff 'observing' any of his coworkers' paystubs, … [or] the corroboration of any co-plaintiffs, opt-ins, or even the declaration of someone other than himself" cannot support a motion for conditional certification.  Defs.' Resp. at 8 (quoting *Silva*, 2023 WL 2087955, at *5).  However, Defendants chose to exclude an essential piece of Judge Fouratt's reasoning—that the plaintiff's declaration in *Silva* also did not include evidence of his "shift overlapping with those of his coworkers."  *Silva*, 2023 WL 2087955, at *5.  Judge Fouratt found that this absence was a "key distinction" from *Kerr*—which granted conditional certification based on a singular declaration—where the plaintiff "described his proximity to coworkers."

Contrastingly, the plaintiff in *Silva* "failed to allege where, if ever, he crossed paths with coworkers." 2023 WL 2087855, at *17 n.8.

Plaintiff's declaration does not present these same shortcomings.  Plaintiff explains that he interacted with his coworkers at well-sites throughout New Mexico.  He also displays familiarity with these individuals' work schedules and compensation; plaintiff explains that other oilfield workers had twelve hour shifts and worked fourteen day rotations, that they were all responsible for servicing pumping units and at least five other oilfield workers told him they were not paid overtime.  Pl.'s Decl. ¶ 31–34; *see Kerr*, 2020 WL 6799017, at *3–4 (finding that plaintiff offered "an adequate factual basis" for his allegations where his declaration described information he gleaned from "working and talking with [] coworkers, supervisors, and coordinators").  Plaintiff also submitted significant documentation of Defendants' workplace policies which indicate that Defendants' control over other individuals' work may have made their independent contractor classification improper.  *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (stating factors of "economic reality test" for independent contractors, including "the degree of control exerted by the alleged employer over the worker").  Given the Tenth Circuit's consistent rejection of the "other opt-in plaintiff" rule, it would make little sense to not only require Plaintiff to show existence of these employees, but to detail their experience working for Defendants before discovery has taken place.  Moreover, insisting that plaintiffs identify coworkers by name, or specify the locations of their conversations, would be unnecessarily onerous for employees like Plaintiff Lyles, whose job consisted of driving to well-sites across the state and who may have only briefly interacted with his coworkers.  *See Brown v. EOG Res., Inc.*, Case No. 22-CV-0116 KG/GBW, 2023 WL 2499602, at *5 (D.N.M. Mar. 14, 2023) (describing "the isolated nature of

oilfield work" and "the long stretches of time spent away from home"). The Court therefore finds that the putative class members are similarly situated.

**2. Plaintiff Has Sufficiently Alleged an Unlawful, Uniform Policy.**

The Court now considers whether Plaintiff has proffered sufficient facts of Defendants subjecting the proposed collective to a uniform "decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Defendants argue they have not. Specifically, Defendants aver that because 1099 contractors "are hired on a case-by-case basis," there was no "policy." Defs.' Resp. at 4. This argument misunderstands the uniform policy analysis; the question is not whether Defendants chose to hire 1099 contractors for the same, uniform reason, but whether, when they did so, these workers were subject to the identical compensation practices. *See Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 422 (W.D. Okla. 2017) ("Whereas here, Plaintiffs allege that the compensation scheme is in of itself a violation of the FLSA. No further factual inquiry is necessary [sic] … Liability can be determined collectively without limiting the class to a specific job position." (quoting *Tamez v. BHP Billiton Petroleum, Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at *3 (W.D. Tex. Oct. 5, 2015)). Defendants do not dispute that all putative class members received the same status and compensation structure. Defs.' Resp. at 3, 10 (stating that the "only seemingly common thread" tying the putative plaintiffs together is that they "were all classified as independent contractors" and agreeing that those contractors were paid on a day-rate basis). Defendants attempt to trivialize this admission by highlighting that "nearly every individual hired by T and Ds Lube Doctors is hired as an employee." Defs.' Resp. 16. Whether an illegal policy impacts only a few employees or every employee at a company, however, is not relevant to whether the Plaintiff has alleged a "practice or policy." Plaintiff must show that there

are "others similarly situated," not that those "others" constitute a majority, or even a significant portion, of an employer's workforce.

Accordingly, Defendants' practice of exempting independent contractors from overtime compensation is sufficient evidence of a "policy" at this stage. *See, e.g.*, *Hasken v. City of Louisville*, 213 F.R.D. 280, 282 (W.D. Ky. 2003) (granting conditional certification where employer "utilized the same method for calculating scheduled overtime when compensating overtime" for all class members); *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009); *Garza v. Fusion Indus., LLC*, Case No. CIV-20-336, 2022 WL 1087209, at *3 (W.D. Okla. Apr. 11, 2022) ("In its Answer, Defendant does not dispute its policy of engaging qualified independent contractors as the need arises to perform skilled welding services on a short-term basis … The Court, thus, finds a reasonable basis to conclude a singular policy existed with regard to classifying welders."); *Williamson v. Ameriflow Energy Servs., LLC*, Civ. No. 15-878, 2016 WL 10179250, at *3 (D.N.M. Sept. 15, 2016) ("[T]hat Defendants had a practice of classifying flow testers as independent contractors and, on that basis, not paying them overtime wages is sufficient, under the lenient standard applicable to conditional certification, to show that the flow testers were victims of the same decision, policy, or plan."). Courts have conditionally certified similar collectives of oilfield workers. *See, e.g.*, *Corral v. Concho Resources, Inc.*, Civ. No. 21-0390, 2022 WL 3715853, at *5 (D.N.M. Aug. 29, 2022) (conditionally certifying collective of all well-site consultants who were classified as independent contractors); *Brown*, 2023 WL 2499602, at *6 (conditionally certifying collective of all oilfield water consultants who were classified as independent contractors).

The Court finds Defendants' well-worn (and oft-rejected argument) that conditional certification is unjustified because they legitimately exempted workers from the FLSA to be

irrelevant.  *See, e.g.*, *Kerr*, 2020 WL 6799017, at *5 (rejecting defendants' argument that it properly classified workers as independent contractors as basis for denying conditional certification); *Kemmerlin*, 2025 WL 371802, at *6 (same).  As courts in this Circuit have reiterated, whether an employer legally exempted their workers from the FLSA is a merits-based question and cannot be addressed at this stage.  *See Guarriello*, 517 F. Supp. 3d at 1173 ("Defendants may offer fact-based defenses, but these arguments are irrelevant to the question of collective treatment to the extent they go directly to the merits of Plaintiffs' claims."); *Kemmerlin*, 2015 WL 371802, at *4 ("[T]he Court will not consider defendant's merits-based arguments[.]"); *Renfro v. Spartan Comput. Servs.*, 243 F.R.D. 431, 435 (D. Kan. 2007) (same); *cf. Medrano v. Flowers Foods, Inc.*, Civ. No. 16-350 JCH/KK, 2021 WL 3290711, at *3 (D.N.M. Aug. 2, 2021) ("A plaintiff need not prove at this first step in the certification process that they were actually misclassified as independent contractors. Rather, it is sufficient that they demonstrate that they have been treated alike by the same employer for similar reasons.").  Whether Defendants' decision to classify Plaintiff and other workers as independent contractors is proper under the FLSA will be resolved after discovery.

In granting conditional certification, the Court reiterates that the purpose of its stage-one analysis is to determine whether there are substantial allegations of other similarly situated employees who suffered a common injury.  The Court does not express "any opinion as to whether discovery will identify any others who are similarly situated, whether plaintiff would be able to make a sufficient showing to avoid decertification of the conditional class, or whether plaintiff's claims in this case have merit."  *Daugherty v. Necana Oil & Gas, Inc.*, 838 F. Supp. 2d 1127 (D. Colo. 2011).

### 3. The Size of the Collective Does Not Prevent Conditional Certification.

Lastly, the Court addresses the potentially small size of Plaintiff's putative collective—three employees per Plaintiff's reply, Pl.'s Reply at 3—to explain why small collectives align with the FLSA's text and purpose. The FLSA enables an employee to maintain an action "by any one or more employees." 29 U.S.C § 216(b). In notable contrast to Rule 23 class actions, FLSA collective actions have no numerosity requirement. *See id.*; *Troy v. Kehe Food Distrib., Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011); *cf. Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (noting that FLSA collective actions lack "the kind of detailed procedural provisions found in Rule 23"); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) ("[I]t is error for courts to equate the requirements of § 216(b) with those of Rule 23 in assessing whether named plaintiffs are 'similarly situated' to opt-in plaintiffs under the FLSA."). In fact, in banning "representative" actions, Congress aimed to "prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit." *UFCW, Local 1654 v. Alberston's, Inc.*, 207 F.3d 1193, 1200 (10th Cir. 2000). Small collectives are thus integral, not antithetical, to the FLSA; they enable employees who have suffered a unique injury or who work in uncommon roles to enforce its provisions. *James*, 522 F. Supp. at 913 ("Specifically, collective actions empower individuals to band together and pursue common justice in disputes that otherwise might entail an enormous imbalance of power."). Defendant's response highlights how few independent contractors it hires, but this reasoning ignores that "the purpose of the FLSA is to ensure that *every* covered worker receives 'a fair day's pay for a fair day's work.'" *Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017) (emphasis added); *Kenney v. Helix TCS*, 939 F.3d 1106, 1111 (10th Cir. 2019) ("The FLSA is a remedial scheme for the benefit of *all* workers." (emphasis added)).

The Court thus refuses to impose an arbitrary numerical floor on FLSA collective actions. *Williams v. Matteson Sports Bar*, 724 F. Supp. 3d 713, 720 (N.D. Ill. 2024) ("[D]emanding numerosity in the absence of statutory language requiring it would be inconsistent with the command that the FLSA be interpreted 'broadly and comprehensively in order to accomplish the remedial purposes of the Act.'" (citation modified); *cf. Fedorenko v. United States*, 449 U.S. 490, 513 (1981) ("We are not at liberty to imply a condition which is opposed to the explicit terms of the statute."); *Dodson v. Zelez*, 917 F.2d 1250, 1256 (10th Cir. 1990) ("We do not have the power to rewrite the statute."). To hold otherwise would be to sanction illegal conduct so long as it only effects a select few employees. This Court therefore agrees with other district courts who have addressed this question and found that there is no numerosity requirement for FLSA collectives. *See Matteson Sports Bar*, 724 F. Supp. 3d at 720; *Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 842 (W.D. Wis. 2018) (rejecting defendant's challenge to collective action as too small because defendant did not "direct the court to any FLSA opinion requiring a threshold number to maintain a collective action"); *Laughlin v. Jim Fischer, Inc.*, Case No. 16-c-1342, 2018 WL 2538356, at *9 (E.D. Wis. June 4, 2018) ("Despite the small size of the opt-in class here, the court similarly finds that a collective action is an appropriate mechanism for resolution of the Named Plaintiffs' claims."); *cf. Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("[C]ourts have not traditionally required a plaintiff seeking conditional certification to come forward with some threshold quantity of opt-in plaintiffs.").

## II.    Notice

Since the Court is granting Plaintiff's request for conditional certification, the Court will now address the appropriate form of notice.

A.  Proposed Notice and Scope of Collective

Defendant's objection to including Defendant Dowdy in the proposed class is overruled. Defs.' Resp. at 13.  Collective actions necessitate that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Hoffman-La Roche*, 493 U.S. at 170.  If there are workers who would identify as working for Defendant Dowdy, rather than T & Ds, they should be given the opportunity to join the collective.

Defendants' request to include language informing plaintiffs that they may be responsible for litigation costs is likewise denied because Plaintiff's counsel has agreed to cover all costs.  Pl.'s Reply at 5.  The Court also agrees with Plaintiff that there is no need to insert the word "contract" before "oilfield workers" because Defendants state that only independent contractors were paid a day rate.  Defs.' Resp. ¶ 5.  The Court will, however, grant Defendants' request to include a statement that the Court "does not endorse or recommend any particular course of action for potential class members." Defs.' Proposed Notice at 1.  Plaintiff did not raise any objection to this amendment and the Court sees no reason not to include it.

B.  Methods of Notice

Plaintiff requests from Defendants the "names, current or last known addresses, e-mail addresses, phone numbers, cell phone numbers, and dates of employment for current and former Oilfield Workers fitting the description of the conditionally certified class."  Pl.'s Mot. for Conditional Cert. at 14.  Plaintiff intends to send notice via mail, e-mail, and text message.  *Id.* at 13.  Defendants do not object to this proposal and the Court therefore grants Plaintiff's request. The Court cautions, however, that Plaintiff and Plaintiff's counsel may only use phone numbers to send text messages.  The Court will also give Defendants fourteen, rather than seven, days to

disclose the above information. Accordingly, Plaintiff shall have twenty-eight, rather than twenty-one, days to send notice to putative members. The thirty-day and sixty-day deadlines outlined in Plaintiff's proposed notice, regarding the timeline for reminder-notice and putative plaintiffs' responses respectively, are unchanged. *Id.*

CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for conditional certification is GRANTED. The following collective is conditionally certified:

> All oilfield workers who worked for T and Ds Lube Doctors LLC and/or Lucas Dowdy anywhere in the state of New Mexico, at any time from July 16, 2021, through the final disposition of this matter and were paid a day rate but did not receive overtime.

It is **FURTHER ORDERED** that:

1. The Parties shall submit within **SEVEN DAYS** of the date of entry of this Order a single Joint Proposed Notice Packet reflecting the above-stated changes and revised notice schedule.

2. Defendants shall have **FOURTEEN DAYS** from the date of entry of this Order to provide Plaintiff with the names, current or last known addresses, e-mail addresses, phone numbers, and dates of employment for current and former oilfield workers fitting the description of the conditionally certified class.

3. Plaintiff's counsel shall send by mail, e-mail, and text message the Court-approved Notice and Consent Form to the Putative Class Members within **TWENTY-EIGHT DAYS** of the date of entry of this Order.

_____

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**